# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SALEEM ANDREW WILSON,<br><br>Defendant | CRIMINAL NO. 3:20-CR-00048<br><br>(MANNION, D.J.)<br>(MEHALCHICK, M.J.) |

## **MEMORANDUM**

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 19). Defendant, Saleem Andrew Wilson, moves this Court to reconsider its earlier order of detention pursuant to 18 U.S.C. § 3142(g), or to consider temporary release pursuant to 18 U.S.C. § 3142(i). The Government opposes this motion. (Doc. 28).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On February 25, 2020, Wilson was charged by Indictment with three counts of firearm and drug trafficking charges in violation of 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon), 18 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of drug trafficking), and 18 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances). (Doc. 1). Wilson appeared before this Court for his initial appearance and arraignment on March 10, 2020, at which time the Court scheduled a detention hearing for March 16, 2020. Following that hearing, the Court held that Wilson did not present sufficient

evidence to rebut the presumption pursuant to 18 U.S.C. § 3142(e)(3)[1] and further, that detention was warranted based on consideration of the factors to be considered under the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the danger to the community should he be released. As to the history and characteristics factor, the Court specifically considered Wilson's prior criminal history and his prior failure to appear in court as ordered. (Doc. 17).

Wilson is currently housed at Lackawanna County Prison. On March 27, 2020, Wilson, through counsel, filed a motion to review detention pursuant to § 3142(g), presenting his mother as a potential third-party custodian for the first time, and pursuant to § 3142(i), seeking an order of temporary release to facilitate the preparation of a defense and due to a compelling reason – that being the risk associated with being incarcerated during the current COVID-19 pandemic. Wilson, who is 39 years old, has type-2 diabetes and has been hospitalized for blood clots in his lungs. He submits that these health conditions place him at higher risk for contracting the COVID-19 virus. Wilson also argues that the virus poses a risk to him and to other inmates, and that his ability to prepare his defense and meet with counsel

---

[1] Under the Bail Reform Act, certain charges, such as those in the instant case, raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). A defendant may rebut the presumption of detention by producing "some credible evidence ... that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The charges against Wilson are serious drug trafficking charges which raise the presumption under § 3142(e)(3).

is impeded by the pandemic. He seeks release to live with his mother in Philadelphia, who he also offers as a third-party custodian.

Counsel for Wilson filed a Notice with the Court on March 31, 2020 indicating that the parties were unable to come to an agreement regarding Wilson's release from detention, and asking the Court to conduct a hearing on the motion. (Doc. 24). The Court held a hearing on the motion on April 6, 2020. (Doc. 27).

## II. DISCUSSION

### A. THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[2] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[3] As of the date of this writing, there are 2,959,929 confirmed cases worldwide and 202,733 deaths; in the United States, there are

---

[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

960,916 confirmed cases and 49,170 deaths.[4] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

### B. CONDITIONS AT LACKAWANNA COUNTY PRISON

In its brief in opposition, the Government outlines the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 28, at 12-13). Specifically, the prison is implementing guidance from the Centers for Disease Control, and the facility is on lockdown. (Doc. 28, at 13).[5]

As of April 2, 2020, one correctional officer at the Lackawanna County Prison tested positive for the virus. The Government submits that, according to the U.S. Marshals Service,

---

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited April 28, 2020).

[5] Though not attached to or referenced more specifically by the Government, the Court is on notice of the procedures implemented by Lackawanna County Prison, and those procedures have been cited in several other decisions of this Court. The prison has implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area. In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. *See United States v. Rinaldi*, 3:18-CR-00279, 2020 WL 1984299, at *2 (M.D. Pa. Apr. 27, 2020); *United States v. Veras*, 2020 WL 1675975 (M.D. Pa. Apr. 6, 2020).

the officer who tested positive did not have any close contact with Marshal Service Personnel, and that it is unlikely, though possible, that the officer who tested positive had close contact with federal inmates at the prison. That officer is recovered from the virus, and no other cases have been reported at the prison.

    C.    RECONSIDERATION OF DETENTION ORDER PURSUANT TO § 3142(F)

Wilson asks this Court to reconsider its previous detention decision based upon the "changed circumstances" of the COVID-19 pandemic and because he can now offer his mother, Sharon Mintz, as a third-party custodian. 18 U.S.C. § 3142(f) states, in pertinent part, as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

While both the COVID-19 pandemic and the offer of Wilson's mother as a third-party custodian are new information, this information does not change the Court's finding that there is no condition or combination of conditions which would assure the safety of the community should Wilson be released.

The charges against Wilson trigger the rebuttable presumption under § 3142. In order to rebut the presumption of detention, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Santiago-Pagan*, 1:08-CR-0424-01, 2009 WL 1106814, at *4 (M.D. Pa. Apr. 23, 2009); quoting *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986).

If the defendant is able to meet this burden of production, the government bears the ultimate burden of persuasion. *See United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir.1986). Even if a defendant rebuts the presumption of dangerousness or flight, however, "the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Santiago-Pagan*, 2009 WL 1106814, at *4; quoting *United States v. Farris*, No. 2:08cr145, 2008 WL 1944131, at *8 (W.D.Pa. May 1, 2008) (internal citations omitted).

Wilson submits that the fact that his mother is willing to serve as a third-party custodian rebuts the presumption of detention in this case. The Court does not find that it does. Rebuttal of the presumption of dangerousness requires a showing that defendant's criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. Though Ms. Mintz testified that she is willing to serve as a third-party custodian and is prepared to report any violations of his conditions of pretrial release, and discourage him from committing any violations, the record before the Court does not reflect that Wilson has a respect for the law, personal reliability, or that his criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. As such, the Court does not find that Wilson has rebutted the statutory presumption of detention.

Even if Wilson had rebutted the presumption, however, consideration of the factors under the Bail Reform Act require that Wilson be detained pending trial, as "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In determining whether any conditions of release will be sufficient, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and

mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The COVID-19 pandemic and Wilson's physical health issues change neither the nature and circumstances of the charged offenses nor the weight of the evidence against Wilson. This new information has no impact on the Court's determination of either of these factors, which weigh squarely in favor of continued detention. The drug and firearms charges against Wilson are extremely serious. The evidence against Wilson, as proffered by the Government, is substantial.

The pandemic and Wilson's health do have some bearing, however, on the third factor under the Bail Reform Act, the nature and characteristics of the defendant. Those "characteristics" include the physical and mental health of the defendant, and the existence and potential impact of the COVID-19 virus is a change in that particular characteristic. However, it is but one characteristic contemplated by the Bail Reform Act. The balance of Wilson's history and characteristics still weighs heavily in favor of detention. Wilson is receiving medical care for COVID-19 while detained, and there is nothing before the Court indicating that he has a plan for medical care should he be released, or that the medical care he might receive in the community is better than that which he is receiving while detained, without continuing to be a threat to the safety of others. *See United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant tested positive for COVID-19, holding that he is receiving medical care in jail, he has no plan

for medical care should he be released, and that there is no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others). Wilson's criminal history is lengthy, severe, and includes felony convictions in state and federal court for drug trafficking and driving under the influence. Further, while serving the supervised release portion of his sentence for a previous conviction for drug and firearms charges in this Court, he violated the terms of his supervised release when he was charged and convicted in state court of new felony drug offenses.

Wilson has a history of engaging in dangerous behavior, not complying with terms of release, and being unable to follow rules and orders of the Court. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020). Wilson's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on pretrial release. *United States v. Lee*, 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). It may also place the United States Marshals Service officers at risk if re-apprehending him is necessary. *See United States v. Lunnie*, 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020).

Finally, the Court considers the fourth detention factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release.*" *Lee*, 2020 WL 1541049, at *4–5; 18 U.S.C. § 3142(g)(4) (emphases added). Wilson's release, which the Court has previously determined to pose a danger to the community, now

poses a greater danger. That danger now includes not only this Court's previous conclusion that he will continue to engage in the same types of unlawful and potentially dangerous conduct that led to the charges in this case, but also the heightened safety risks that Wilson's release poses to the probation officers tasked with monitoring his behavior if he were to be released on supervision. *Lee*, 2020 WL 1541049, at *4-5; *see also United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (motion for release denied, in part, where defendant did not convince the court that her release would not pose a danger to the community).

Based on the foregoing, the Court finds that there is nothing about the new circumstances of the COVID-19 pandemic, or Wilson's proposed release plan, that has a material impact on any of the factors previously considered by this Court in determining that he should be detained. Therefore, Wilson's motion to reopen the Court's detention decision pursuant to 18 U.S.C. § 3142(f) is denied.

D.    TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

Wilson also moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That section provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*
>
> 18 U.S.C. § 3142(i) (emphasis added).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the

9

proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

Until recent weeks, most motions brought pursuant to § 3142(i) were analyzed under the "necessary for preparation of the person's defense." Not much authority existed as to when temporary release is justified under § 3142(i) based on "another compelling reason." Typically, relief was granted under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see also United States v. Scarpa,* 815 F. Supp. 88 (E.D.N.Y. 1993) (permitted the defendant to be released under the 24-hour guard of the United States Marshal Service at his own expense because the defendant had sustained a gunshot wound that destroyed his left eye and surrounding area of his face and skull, he would "shortly die" from terminal AIDS, and correctional authorities could no longer manage his medical conditions.); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 144-47 (D.P.R. 2002) (district court ordered the release of a defendant who had sustained multiple gunshot wounds, was partially paralyzed, could not walk, had lost some arm function, had a wound the size of a fist, and required 4-5 contracted security guards on a daily basis to supervise him; the Bureau of Prisons would not take custody of him because it could not provide the medical care that he required.) More recently, in *United States v. Garcha*, the Court granted defendant's motion for pretrial release pursuant to § 3142(i) where the defendant was HIV-positive, had a brain tumor, and suffered a pulmonary embolism in 2017, and thus was not only particularly susceptible to contracting the COVID-19 virus, **but was also** unable to obtain the necessary MRI and treatment for his brain tumor while in prison.) 2020 WL 1593942, at *2 (N.D. Cal. Apr. 1, 2020) (emphasis added).

Since the onset of the COVID-19 pandemic, and the filing of motions seeking pretrial release, release pending sentencing, compassionate release, and delays in report dates, courts across the country have begun to consider whether the pandemic constitutes a "compelling reason" for temporary release. Consistent in these decisions are findings that the risk of exposure, actual exposure, or contracting the virus, is just one factor to be considered and weighed against the other factors under the Bail Reform Act, including previous findings of danger to the community and risk of flight. Further, the existence of a widespread health risk or mere speculation about potential exposure to the virus does not constitute a "compelling reason" for temporary release under § 3142(i).[6]

Exposure to COVID-19 is just one factor to be weighed against the original factors considered by the court in ordering detention. Further, the potential exposure exists anywhere in the community, not just in jail, and where necessary steps and precautions to help stop the spread of the virus are being taken by the county jail, along with the court and other authorities, and where there is no indication that a defendants' medical needs are not being met, speculation concerning possible future conditions does not constitute a "compelling

---

[6] In considering an application for compassionate release, the Court of Appeals for the Third Circuit recently noted "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). In considering a motion to continue a self-surrender date in light of the COVID-19 pandemic, the court noted that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief. *Roeder*, 20-1682, 2020 WL 1545872, at *3.

11

reason" for temporary release, especially where the court previously found defendant's release would pose a danger to the community. See *United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (defendant not entitled to release pending final supervised release revocation hearing where she did not articulate any unique susceptibility to the Covid-19 virus and she did not convince the court that her release would not pose a danger to the community); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that while Defendant indicates that he suffers from hypertension, sleep apnea and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions are not sufficient to establish a compelling reason for release given the danger to the community if he is released and the efforts being undertaken at the [jail] to combat the spread of the virus) (citing *United States v. Davis,* No. 19-1604, Doc. No. 50 (3d Cir. March 20, 2020); *United States v. Willie Harris,* No. 18-152, Doc. No. 986, Mem. Order (W.D. Pa. March 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Veras*, 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020); *United States v. Williams*, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates have tested positive for COVID-19 and defendant suffers from allergies and asthma); *United States v. William Bilbrough*, *IV*, TDC 20-33 (D. Md. Mar. 20, 2020) (denying the defendant's motion even though the defendant suffered from diabetes); *United States v. Julius Williams*, PWG 13-544 (D. Md. Mar. 24, 2020) (denying a 67-year old defendant's motion); *United States v. Anthony Penaloza*, TDC-19-238 (D. Md. Mar. 31, 2020) (denying the defendant's motion even though the defendant suffered from a heart murmur); *United States v. Teon Jefferson*, CCB-19-

487 (D. Md. Mar. 23, 2020) (denying the defendant's motion even though the defendant was asthmatic). Even where a defendant tests positive for COVID-19, that new circumstance is just one factor to consider in weighing a request for temporary release under § 3142(i). *See United States v. Cook*, 3:16-CR-00312, 2020 WL 1939612, at *4 (M.D. Pa. Apr. 22, 2020) (denying a motion for review of pretrial release by a detainee diagnosed with the virus where he was receiving medical care for COVID-19 while detained, nothing before the Court indicated that he had a plan for medical care should he be released, or that the medical care he might receive in the community was better than that which he is receiving while detained, without continuing to be a threat to the safety of others); *United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant is receiving medical care in jail, has no plan for medical care should he be released, and no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others).

In determining whether the defendant establishes a "compelling reason" for temporary release pursuant to § 3142(i), the Court considers four factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. These factors are particularly instructive in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act. *Veras*, 3:19-CR-010, 2020 WL 1675975, at *5-6; *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion

using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion denied based on analysis of *Clark* factors despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419 (D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

Considering the factors outlined in *Clark*, the Court concludes that Wilson has not established a compelling reason to grant him temporary release under § 3142(i). The Court has now twice concluded that there is no condition or combination of conditions which could reasonably assure the safety of the community should Wilson be released. In reaching that determination, the Court first determined that Wilson failed to rebut the presumption of detention. Next, the Court considered the factors under § 3142 – the weight of the evidence against the defendant; the history and characteristics of the defendant, including his extensive prior criminal history, and the danger to the community should he be released – and has determined that no condition or combination of conditions could reasonably assure the safety of the community. Wilson's instant motion does not change those grounds for pretrial detention. The nature of the charges against him, the weight of the evidence, and in particular, Wilson's criminal history and characteristics, and the danger to the community should he be released all still weigh squarely in favor of detention. There is no condition or combination of conditions which could reasonably assure the safety of the community or his appearance at future proceedings should he be released.

Second, although Wilson submits that his history of diabetes and blood clots increase his risks from exposure to the COVID-19 virus, the record reflects that he is receiving necessary treatment for his conditions while in Lackawanna County Prison, or that the prison is not taking steps to mitigate his risk for infection. Although mindful of the magnitude of the COVID-19 pandemic, and the extreme health risks it presents within the jail and prison setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at \*8; *see also Raia*, 2020 WL 1647922, at \*2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Wilson's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at \*6. If released, Wilson proposes that he live in the Philadelphia area with his mother and her fiancé, and another child. Additionally, Wilson's mother testified that her other son comes to the house about every other day and sometimes stays there. Although she also testified that Wilson could be quarantined in the basement, this is only one aspect of public health officials' recommendations and does not address other risk factors that would arise if Wilson were released from custody. *Clark,* 2020 WL at 1446895, at \*6. The information offered by the Government establishes that there is a plan to address and mitigate the risks of COVID-19 at the prison and to treat Wilson's other health issues. Despite Wilson's conclusory allegations that the prison will be unable to manage care of inmates during the pandemic, the information before the Court includes the prison's actual plan to do just that. *Boatwright*, 2020 WL 1639855, at \*7. Further, Wilson does not address the extent to which his risks of infection

could be exacerbated if he were to be released to live with his mother, girlfriend, and extended family. Nor does he address how his other health issues – the diabetes and blood clots – will be treated. Other than a proposal to quarantine him in the basement, there is no explanation of how the proposed living situation mitigates not only Wilson's risk of infection, but the also the risk of infection to everyone else in the house, and those individuals who come and go from the house on a regular basis. There is potential exposure to infection under the proposed release plan, not just to Wilson but to others living with him.

Finally, the Court considers the likelihood that Wilson's proposed release would increase COVID-19 risks to others. The Court has previously decided that Wilson should be detained, in part because he was unable to comply with other court orders, and because of his criminal history. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Wilson's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on supervised release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Wilson's proposed temporary release[7] plan ends, it will place the United States Marshals Service officers at risk in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

---

[7] Having determined that Wilson does not establish a compelling reason for temporary release under § 3142(i), the Court will not reach what the scope of "temporary" might mean in this situation.

Wilson also submits that his release is necessary for the preparation of his defense. The Court recognizes that the pandemic may pose obstacles to the preparation of a defense. However, in this case, Wilson has not established that the restrictions in place at Lackawanna County Prison are such that they are a compelling reason for his temporary release. First, though not ideal, the prison still allows for attorney visits, albeit through a glass window. Nothing in the measures outlined by the prison indicate that attorney visits or calls are in any other way restricted. The Court is confident that the prison will respect the privileged nature of the communications between attorneys and their clients as nothing to the contrary has been brought to its attention to cause concern. Wilson has not suggested that his situation with regard to consultation with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time. See *Dodd*, 2020 WL 1547419 at *3.

III.  **CONCLUSION**

The Court has considered the evidence presented by the Government and by Wilson, including Wilson's medical information, his proposed release plan, and the response of Lackawanna County Prison to the pandemic. However, even considering this information, the balance of the factors under the Bail Reform Act – the nature and circumstances of the offenses charged, the weight of the evidence, the history and characteristics of the defendant, and the danger to the community upon release – mandate that Wilson remain detained, as there is no condition or combination of conditions that can reasonably assure the safety of the community should he be released.

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and recognizes the potential for Wilson's exposure to the virus while at Lackawanna County Prison, that potential exists anywhere in the community. Lackawanna County Prison has

taken steps to minimize infection. There is no evidence that Wilson is not getting the medical attention he needs. Additionally, Lackawanna County Prison has put in place protocols to allow for lawyer-client communications while also protecting against the spread of the virus. In sum, Wilson has not presented a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

For these reasons, Wilson's motion for pretrial release (Doc. 19) is **DENIED**.

An appropriate Order will follow.

**Dated: April 30, 2020**                                        *s/ Karoline Mehalchick*
                                                                  **KAROLINE MEHALCHICK**
                                                                  **United States Magistrate Judge**